UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

JOHN M. DEANGELIS,                          Case No. 18-31113-dof
        Debtor.                             Chapter 7 Proceeding
                                            Hon. Daniel S. Opperman

_____/

## OPINION GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS

### Introduction

Daniel M. McDermott, the United States Trustee, moves to dismiss this case because he argues that there is a presumption of abuse under 11 U.S.C. § 707(b)(2) and because the totality of the circumstances warrant dismissal under 11 U.S.C. § 707(b)(3). The Debtor, John M. DeAngelis, disagrees and has filed affidavits supporting his contention that there is no presumption of abuse and that his income, expenses, and circumstances do not warrant dismissal after the totality of the circumstances are considered. For the reasons stated in this Opinion, the Court grants the United States Trustee's Motion to Dismiss.

### Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. 1334(b), 28 U.S.C. § 157, and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

### Facts

The Debtor filed his petition seeking relief under Chapter 7 of the Bankruptcy Code with this Court on May 2, 2018 and reported that his current monthly income was $7,690.61 in Form 122A-1.

1

Annualized, his income is $92,287.32 and is therefore above the applicable median amount, which required him to file additional papers with this Court. In some of these papers, the Debtor submitted his affidavit stating that in the six months prior to his petition, he received $18,000.00 from his brother, on the average of $3,000.00 per month. His brother likewise filed an affidavit stating that he does not owe the Debtor any money and that the $3,000.00 per month is a gift which the Debtor's brother hopes to continue to give to the Debtor given his financial circumstances. As both brothers stated in their affidavits, there is no expectation that these gifts will continue, however, there is no evidence that the gifts will stop.

The Debtor's Schedule I reported monthly income of $3,895.28, as well as an additional net income of $1,720.35, resulting in a total net income of $4,022.52. This amount does not include any financial assistance that the Debtor receives from his brother. Schedule I listed two deductions regarding the Debtor's retirement: $584.31 as a contribution and $176.28 as a loan repayment.

The expenses stated in Schedule J that support the United States Trustee's Motion to Dismiss include mortgage payments of $1,900.00 and $586.00 on the Debtor's first and second mortgages, as well as $580.00 for a 2018 vehicle that the Debtor purchased approximately six months before his petition. These expenses are claimed to be excessive and unreasonable in light of the Debtor's circumstances.

Subsequently, the Debtor amended his Schedules I and J to delete the voluntary contribution to his retirement plan of $584.31. This raised the Debtor's net income to $4,606.83. The Debtor also removed some miscellaneous expenses in Schedule J such that the Debtor now reports a deficit of $288.09 per month, as opposed to a deficit of $1,142.40.

2

The Court heard oral argument regarding the Motion to Dismiss and the Debtor requested an opportunity to further document his expenses and to file a brief. The Court granted that relief, so each party filed supplemental briefs. At the August 29, 2018 hearing, however, the parties stated that after supplemental briefs were filed, the record would be complete and this Court could issue an opinion without additional hearings. In making these findings of fact, the Court has carefully reviewed the pleadings filed in this case, as well as considered arguments made at the August 29, 2018 hearing.

<u>Arguments of the Parties</u>

The United States Trustee argues that the Debtor's receipt of income from his brother raises the Debtor's income above median and therefore creating a presumption of abuse. While the United States Trustee concedes that the Debtor is entitled to have an opportunity to overcome the presumption of abuse, the United States Trustee argues in this case that the Debtor has not done so for the reason that the facts stated in the affidavit have not come to pass that would force a hardship upon the Debtor. In particular, while the United States Trustee concedes that if the Debtor's brother failed to make an approximate $3,000.00 per month gift to him, then the Debtor could not pay his creditors. The Debtor's brother has so far given the Debtor the necessary gifts to allow the Debtor to pay his creditors. Without arguing as much, the United States Trustee points out that if an additional $3,000.00 per month is added to the Debtor's income, then the Debtor could fund a Chapter 13 Plan because the Debtor's unsecured creditors only total $48,120.68.

As for the totality of the circumstances, the United States Trustee points out that the Debtor may not make a contribution to his retirement plan. *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012). Also, the United States Trustee argues that the Debtor's home, which is valued at

$345,000.00, is too large and expensive for the Debtor and his minor son, especially in light of the two monthly payments of $1,900.00 and $586.00 on the first and second mortgages respectively. Finally, the United States Trustee argues that the Debtor's purchase of the 2018 Ford Escape approximately six months before he filed his bankruptcy petition results in a higher than usual automobile payment.

The Debtor vigorously disputes the United States Trustee's arguments and points out that while his brother has been very kind and consistent in his payments to the Debtor, there is no commitment to make another payment to him. Accordingly, the Debtor believes he has overcome the presumption of abuse and that the totality of the circumstances does not warrant dismissal of this case. In particular, the Debtor argues that the home in question was purchased in 1999 while the Debtor was still married and that the Debtor needs this home to provide a stable home to his son, for whom he has sole legal guardianship. Because the Debtor is a traveling salesman who needs reliable transportation, the purchase of his vehicle was coincidental and should not be considered by this Court.

<u>Applicable Law</u>

<u>Legal Standard -- "Substantial Abuse" Under 707(b)(3)</u>

A bankruptcy court may dismiss a Chapter 7 case where the debts are primarily consumer debts if the court finds that granting a discharge would be a "substantial abuse" of the Bankruptcy Code. Section 707(b)(1), (2) and (3) of the Bankruptcy Code provides:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether

4

a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of —

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,700, whichever is greater; or

(II) $12,850.

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.
11 U.S.C. § 707(b).

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide —

(I) documentation for such expenses or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

5

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of —

(I) 25 percent of the debtor's nonpriority unsecured claims, or $7,700, whichever is greater, or

(II) $12,850.

Under Section 707(b)(2), a presumption of abuse exists if a debtor's income is above a set income. The presumption may be overcome if the debtor can demonstrate special circumstances by providing documents and attesting to the accuracy of information and documents.

To determine whether to dismiss a case under Section 707(b)(3), the Court must look to the totality of the circumstances. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). Substantial abuse can be shown either 1) where the debtor has acted dishonestly, or 2) where the debtor is not needy, i.e. his financial situation does not warrant a discharge in exchange for the liquidation of his assets. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429 (6th Cir. 2004).

In determining whether the debtor is acting honestly, the Court should examine whether the debtor made substantial eve of bankruptcy purchases, was dishonest in filing his bankruptcy schedules and other court documents, and whether the bankruptcy was necessitated by unforeseen or catastrophic events. *Krohn*, 886 F.2d at 126.

In determining whether a debtor is needy, the Court should decide whether the debtor could pay his debts out of future earnings, i.e., whether the debtor could fund a hypothetical Chapter 13

plan. This factor alone may compel a dismissal of the case. *Id.* Other factors which may show neediness or a lack thereof include:

> 1) whether the debtor enjoys a stable source of income;
>
> 2) whether he is eligible for adjustment of his debts through Chapter 13;
>
> 3) whether there are state remedies with the potential to ease his financial problems;
>
> 4) the degree of relief obtainable through private negotiations; and
>
> 5) whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities.

*Id.* at 126-27. A debtor is not "needy" if he can trim an exorbitant budget to fund a Chapter 13 plan.

For example, in *Krohn*, the Sixth Circuit affirmed the bankruptcy court's dismissal of the debtor's case for substantial abuse, finding that the debtor consistently lived on credit and beyond his means. The court found that the Section 707(b) statutory preference in favor of granting relief was inappropriate under the totality of the circumstances of that case. Krohn's income was $4,015.00 per month and his expenses were $3,950.00. Even after filing his Chapter 7 petition, the debtor continued to spend excessively; his post petition expenses for a three month period included $1,065.00 for dining out, lunch and recreation (in excess of the $355.00 he was spending on groceries), $169.00 for cosmetics, and $66.00 for cigars. He had ample future income and his financial situation was not the result of any unforeseen event or catastrophe. Based on these facts, the Sixth Circuit affirmed the bankruptcy court's dismissal of the case for substantial abuse under Section 707(b). *Id.* at 127-28.

Further, in determining a debtor's neediness under Section 707(b), courts consider the debtor's disposable income. Disposable income is that received by the debtor that is not reasonably necessary for the support of the debtor, his dependents, or his business. 11 U.S.C. § 1325(b)(2).

7

Voluntary contributions a debtor makes to his 401k plan do not constitute funds necessary for support and therefore must be included in disposable income for the purposes of deciding the issue of substantial abuse. *Behlke*, 358 F.3d at 436. The repayment of a loan from a 401k plan also must be included in disposable income. *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777 (6th Cir. 1995). *Behlke*, 358 F.3d at 435. There is an inherent unfairness in permitting a debtor to pay himself by funding his own retirement account while paying creditors only a fraction of their just claims. *Id.* at 777. *See In re Shands*, 63 B.R. 121, 124 (Bankr. E.D. Mich. 1985) (court dismissed case under 707(b) where debtor filed bankruptcy to discharge debt to ex-husband and yet she continued to pay other favored creditors).

Analysis

No one disputes that the Debtor's total income exceeds the median amount and that a presumption of abuse exists. The Debtor provided affidavits and documents to support his contention that the reason his income is misstated for purposes of the presumption of abuse test is that the amounts given to him by his brother are not certain. While the Debtor is correct in his statement, to date the Debtor's brother has continued to give the Debtor money such that the Court must assume that these payments will continue for the foreseeable future. Accordingly, a straightforward analysis could start and end with the conclusion that the Debtor's affidavits, while true, do not sufficiently overcome the presumption of abuse and that the United States Trustee's Motion to Dismiss should be granted.

But to complete the analysis under the totality of circumstances, the Court likewise concludes that this case should be dismissed. In his amended Schedule I, the Debtor has eliminated the contribution to his retirement plan which, along with a few other adjustments, places the Debtor

with a deficit of $288.00 per month before the gift from his brother. Once the required repayment of the retirement loan of $176.28 is completed, this deficit is reduced to almost $100.00. But the reason that dismissal is warranted here is the Debtor's expenses regarding his home. The monthly payment on the two mortgages is $2,486.00, which is only approximately $400.00 less than the Debtor's $2,886.00 take home pay. The Debtor has not offered any method to solve his excessive housing expenses other than to hope that his brother will continue to give him $3,000.00 per month and that in the event he receives a discharge in this case his mortgage holders will allow him to continue to make payments without reaffirming his obligations to each mortgage holder.

The Debtor argues persuasively that he needs to have a suitable home for his son, but does not argue that the home in question is the only suitable home. The Debtor's current home, which is valued at $345,000.00, costs the Debtor approximately all of his take home pay. Much more affordable housing is generally available and once the Debtor's expenses are suitably reduced, he would have the funds available to pay his unsecured creditors regardless of whether his brother gives him any more money. The failure of the Debtor to address his living arrangement causes this Court to conclude that the Debtor can reduce his expenses significantly without depriving him of adequate food, clothing, shelter, and other necessities as mandated by *Krohn*. Finally, while the United States Trustee makes a good point that the Debtor seemingly upgraded his vehicle a few months before his bankruptcy petition, the amount in question here is not so significant to cause this Court to dismiss this case on that point alone. Instead, the extremely high mortgage payment causes this Court to grant the United States Trustee's Motion to Dismiss under 11 U.S.C. § 707(b)(2) and (3).

Counsel for the United States Trustee is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Not for Publication**

**Signed on November 09, 2018**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge